On respondent's motion to supplement record and for reconsideration filed March 5, 1986; motion allowed; former opinion (77 Or App 325, 713 P2d 672) withdrawn; affirmed on appeal and cross-appeal June 4, 1986

# NORTHWEST CLIMATE CONDITIONING ASSOCIATION et al,
*Appellants - Cross-Respondents,*

*v.*

# JOHN J. LOBDELL,
*Respondent,*

# NORTHWEST NATURAL GAS,
*Intervenor-Respondent - Cross-Appellant.*

(A8304-02546; CA A32010)

720 P2d 1281

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and John A. Reuling, Jr., Assistant Attorney General, Salem, for the motion.

No appearance *contra.*

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The Public Utility Commissioner has moved for reconsideration and to supplement the record. We grant the motion to supplement the record, and we reconsider and withdraw our former opinion on an appeal from the circuit court's review of an order of the Commissioner. *Northwest Climate Conditioning v. Lobdell,* 77 Or App 325, 713 P2d 672 (1986). After discovering that the 28 exhibits put in the record before the Commissioner had not been transmitted by the circuit court to the Court of Appeals, were not in the records office of the circuit court and, as we interpreted the trial court judge's comments on the record, had not been seen by the judge at the time of argument before him, we concluded that the complete record of the Commissioner's hearing had not been considered by the circuit court in its review, as required by ORS 756.598, and we reversed and remanded. Because the parties now stipulate that the court in fact had before it and in fact did consider the complete record of the Commissioner's hearing, and because the record has now been supplemented, we are now able to review the Commissioner's order. Therefore, we withdraw our former opinion.

In this proceeding under ORS 756.500 *et seq* plaintiffs appeal from a judgment which affirmed the Commissioner's order that Northwest Natural Gas (Northwest) was not required to charge separately for inspection, adjustment and pilot light relighting services and that the charge for those services could be included in the general charge for gas utility service on its tariff schedule. Intervenor Northwest cross-appeals, seeking reversal of that portion of the court's judgment which reversed the Commissioner and held that Northwest's repair and replacement activities are subject to regulation. We affirm.

■    Although the appeal is from a judgment of the circuit court, we review the *Commissioner's* order. ORS 756.598; *Publishers Paper Co. v. Davis,* 28 Or App 189, 559 P2d 891 (1977). We may not substitute our judgment for that of the Commissioner as to any finding supported by substantial evidence. ORS 756.598. We need not agree with the Commissioner's inferences or reasoning to uphold the order, if it contains sufficient findings and conclusions to enable us to determine that the reasoning is rational and that the agency

has acted within its grant of power. *American Can v. Lobdell,* 55 Or App 451, 638 P2d 1152 (1982).

For as long as there has been public utility regulation in Oregon, Northwest and its predecessors have offered appliance adjustment, inspection and pilot light relighting services to all customers for gas furnaces, water heaters and appliances.[1] The services are described in detail in Northwest's "Policy and Procedure Manual" and can be done quickly with only a few hand tools and no replacement parts. The services include: observation of the customer's gas-burning equipment to determine malfunctions and hazards; flue gas analysis to determine burner efficiency; tuning of equipment; disassembly and clearing of pilot lights; adjustment of temperatures from room to room; calibration of gauges and instruments; and adjustment of burners.

Although Northwest's tariff schedule shows that those services are provided,[2] customers are not charged separately for them. The cost to Northwest of providing the services is not separately reflected in its accounting records; instead, it is included in the general charge for gas service. In 1981, Northwest had a monthly average of 232,066 customers. During that year, it made 99,654 service calls that included inspection, adjustment or pilot light relighting.

Northwest also performs minor repairs and replaces small parts if it discovers defects while inspecting appliances. It does not offer the service as such to its customers. The part most frequently replaced is a thermocouple, a device which shuts off the gas feeding the pilot light if the pilot light goes out. Generally, after determining that repairs more involved than replacement of a thermocouple are required, a Northwest

---

[1] As applicable to this case, OAR 860-21-010(1) provided:

"Each utility shall, upon request, furnish its customers such information and assistance as is reasonable, in order that customers may secure efficient service. Upon request gas and electric utilities shall render every reasonable assistance to enable the customer to secure appliances properly adapted and adjusted to the service furnished."

In 1983, the rule was amended to require that, on the customer's request, a utility provide inspection and adjustment services. Administrative Order No. PUC 5-1983, filed May 31, 1983, effective June 1, 1983.

[2] The services are listed in the schedule, because the Commissioner's order directed that they be listed.

employe advises the customer to seek service from an independent company. In 1981, Northwest replaced 1300 thermocouples and performed other repairs in 600 additional instances. Customers are charged directly for repairs and replacements, but no tariff has been filed by Northwest respecting those services.

Plaintiffs are private companies that provide and charge for maintenance and repair services to gas appliances. They commenced these proceedings, among other reasons, to compel Northwest to file tariff schedules separately setting forth charges for all services which it renders to the public. The parties agree on several initial points, including that Northwest is not prevented by law from offering the services. Northwest concedes that its inspection, adjustment and relighting activities are "services" under ORS 756.010(11)[3] and are subject to rate regulation and the tariff requirements of ORS 757.205(1).[4] It does not concede that repair and replacement activities are services, and that is the point of its cross-appeal, which we address first.

■       Northwest contends that, because it does not generally offer repair and replacement services and because those activities are infrequent and sporadic, it should not be required to show them on its tariff schedule. It claims that the listing of repair and replacement costs on the schedule would lead customers to believe that the services are offered generally. It contends further that the filing of a tariff is a matter within the Commissioner's discretion and that the Commissioner did not abuse that discretion in determining that it would not further the public interest for Northwest to file a tariff for its repair and replacement activities. Plaintiffs contend that there is really no distinction between "inspection, adjustment and relighting services" and "repair and replacement services" and that both fall within the Commissioner's regulatory responsibility.

---

[3] ORS 756.010(11) provides: " 'Service' is used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the product served."

[4] ORS 757.205(1) provides:

"Every public utility shall file with the Commissioner, within a time to be fixed by him, schedules which shall be open to public inspection, showing all rates, tolls and charges which it has established and which are enforced at the time for any service performed by it within the state, or for any service in connection therewith or performed by any public utility controlled or operated by it."

The Commissioner's administrative responsibility extends to *all services* provided by public utilities that are subject to ORS chapter 756. ORS 756.010(11) provides that the term "service" "is used in its broadest and most inclusive sense." That unequivocal definition leaves little room for agency discretion. "Service" in its "broadest and most inclusive sense" indubitably encompasses the repair and replacement activities performed by Northwest. We affirm the circuit court's judgment reversing and remanding that portion of the Commissioner's order which held that repair and replacement activities are not subject to regulation.

■   We next consider whether Northwest is required by law to list a separate charge in its rate schedule for service calls involving inspection, adjustment and pilot light relighting. It maintains that the practice of showing the availability of the services on the schedule and including the charges for them within the general tariff for gas service is sufficient to comply with the tariff requirements.

Plaintiffs contend that a separate charge for and listing of each service is required by the public utility law. Our reading of the pertinent statutes does not persuade us of that. ORS 757.205, n 4, *supra,* requires that a utility file a schedule showing all rates for any service performed by it within the state or for any service in connection with a service. Northwest's practice of reflecting the costs for inspection, adjustment and relighting within the basic charge for gas service is not inconsistent with that requirement. ORS 757.225 and ORS 757.310(1)[5] prohibit a utility from charging directly more

---

[5] ORS 757.225 provides:

"No public utility shall charge, demand, collect or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in printed rate schedules as may at the time be in force, or demand, collect or receive any rate not specified in such schedule. The rates named therein are the lawful rates until they are changed as provided in ORS 757.210 to 757.220."

ORS 757.310(1) provides:

"Except as provided in ORS 757.315, no public utility or any agent or officer thereof shall, directly or indirectly, by any device, charge, demand, collect or receive from any person a greater or less compensation for any service rendered or to be rendered by it than:

"(a) That prescribed in the public schedules or tariffs then in force or

or less for any service than is prescribed in the rate schedule or than it charges anyone under similar circumstances. Plaintiffs suggest that the implication of the two provisions is that a utility cannot charge for any service for which a separate charge is not specified in the rate schedule. That is a strained interpretation. The sections merely require that, if a rate is prescribed in the rate schedule, all customers must be charged that rate, no more and no less. Northwest's practice does not contravene that rule.[6] The three sections together require that all rates be reflected in the rate schedule and that customers be charged those rates. They do not direct the way in which a utility may charge for its service or require that a utility establish a separate charge for each service.

■ A utility's rate schedules are subject to review by the Commissioner, ORS 757.210, and in setting "just and reasonable" rates he has "great discretion." *American Can Co. v. Davis,* 28 Or App 207, 216, 559 P2d 898 (1977). Although this is not a rate case in the usual sense, we conclude that Northwest's manner of charging for and listing a service on its tariff schedule is also subject to the Commissioner's review.

■ Plaintiffs challenge the Commissioner's order on the ground that there is no evidence to support the finding that "the public interest for safety and energy conservation requires [Northwest] to respond to requests for inspection without a separate charge." We do not read that statement as a "finding"; rather, it is a policy statement for which there is ample support in the record. In his prepared testimony, Hathaway, Northwest's Senior Vice President, Operations,[7] stated that a significant number of service calls are prompted

---

established; or

"(b) It charges, demands, collects or receives from any other person for a like and contemporaneous service under substantially similar circumstances."

[6] Plaintiffs contend that the practice of including the charge for inspection, adjustment and pilot light relighting within the base charge for gas services results in some customers paying for services they do not use and others paying less than the value of the services received. We have rejected the argument that rates must be set exclusively on the basis of cost-of-service. *American Can Co. v. Lobdell,* 55 Or App 451, 462-63, 638 P2d 1152, *rev den* 293 Or 190 (1982).

[7] Hathaway's prepared testimony appears in Exhibit "E," which is not one of the exhibits which we received to supplement the record. Exhibit "E" is in the circuit court file, because the judge apparently asked the parties to send him a copy while he had the case under advisement.

by dangerous or potentially dangerous conditions; that the imposition of a charge for inspection, adjustment and pilot light relighting would cause customers to defer service needed for safety or appliance efficiency; and that it is convenient to customers and to Northwest to have gas appliances inspected and adjusted while the Northwest employe is on the premises for other purposes. Hathaway also testified that the availability of inspection, adjustment and relighting services contributes to safe and efficient energy use. The Commissioner's policy is consistent with the responsibility to insure that utilities provide adequate and safe service, *see* ORS 757.020, and the duties and powers under ORS 756.036 and ORS 756.040 and is supported by the record.

Summarizing, we hold that Northwest's repair and replacement activities are services, subject to regulation; the law does not require that each of the services be charged for separately; the Commissioner has discretion to determine the way in which services are charged for and reflected in the rate schedule; and the Commissioner did not abuse that discretion in determining that the charge for inspection, adjustment and relighting services could be included within the charge for gas service.

Motion to supplement record and for reconsideration allowed; former opinion withdrawn; affirmed on appeal and cross-appeal.